## James Morton *vs.* Harvey Moore.

A highway running eastwardly forked into two branches, one passing north and the other south of a blacksmith's shop, and both then entering nearly at right angles into another highway.  The blacksmith's shop and the fences on the south side of the southern branch and on the north side of the northern branch of the first highway had stood for more than twenty years.  *Held*, that by virtue of the Rev. Sts. c. 24, § 61, in the absence of other evidence of the limits of this highway, the fences and shop must be deemed its boundaries, and the triangle of land between its branches, except the shop, part of the highway; and that the owner of the shop might maintain an action against any one unlawfully obstructing the access to his shop by depositing lumber on this land.

A deed of a mill and mill dam. " with all the rights, privileges and appurtenances thereto pertaining, as mill-yard, timber, stone, iron, stream or streams, including a lot of land lying on the north side of the river, and bounded on the west by the highway," does not convey any land west of the highway, or any right to deposit logs within the limits of the highway; and cannot be shown to have that effect by evidence that the owner of the mill has been accustomed so to deposit logs for more than twenty years.

Merrick, J.  This is an action of tort to recover damages for an injury to the plaintiff's land, and for obstructing his right of way to and from his close and his blacksmith's shop described in the

writ, in Hatfield. No question now arises between the parties in relation to the alleged injury to the land, nor as to the ownership of the close and shop. The close abuts upon the Pantry road; and the blacksmith's shop is situate between two forks or branches of it, one passing on the north and the other on the south side of the shop, and then entering upon the Deerfield road, which runs north and south and nearly at right angles with it. The Pantry road existed as early as 1757, at which time there was a location by the town of Hatfield of a way ten rods wide, leading in a westerly direction from the corner of a dwelling-house then standing there. In 1762 four rods in width of this way was discontinued; but it does not appear on which side of it the discontinuance was made. In 1849 the county commissioners laid out a highway, the southerly boundary of which coincided in part with the then existing way; but the easterly end of it is described as terminating near the northwest corner of the blacksmith's shop. This last location did not cover any part of that branch of the Pantry road which entered on the Deerfield road on the south side of the blacksmith's shop. None of the boundaries of any of these roads, or of the above-mentioned forks or branches, as they existed according to the original locations, can now be found or ascertained; but fences stand and have stood upon each side of the eastern way for more than twenty years before the occurrence of the acts complained of.

The defendant is the owner of a saw-mill situated on the easterly side of the Deerfield road. By the deed under which he claims, conveyance is made to him of " a saw and grist mill situated on Mill River in Hatfield, and the dam across said river, with all rights, privileges and appurtenances thereto pertaining as mill-yard, including a lot of land on the north side of the river," bounded on the west by the highway. He claims that by virtue of this he is entitled to have and hold, as part of his saw-mill yard, the small triangular piece of land on the east side of plaintiff's blacksmith's shop, and between the two branches of the Pantry road, and a certain portion of the land still farther west, extending as far as " the great gate," a distance of about thirty rods from

the plaintiff's house, which lies between the fences on the sides of the travelled road.

These facts having appeared upon the trial, the court ruled that the highway extended to the fences on both sides of it, and included all the space within them except the lot on which the blacksmith's shop was standing; and that by the terms of the deed to the defendant he acquired no title to any portion of that way, nor to any land west of the Deerfield road. This ruling is excepted to; but we think that in each of its particulars it was perfectly correct.

To the question respecting the extent and limits of the public way, the statute is a decisive answer. Its provisions are that " where buildings or fences have been erected, and continued for more than twenty years, fronting upon or against any highway, and from length of time or otherwise the boundaries thereof are not known, or cannot be made certain by the records or by any monuments, such fences or buildings shall be deemed and taken to be the true boundaries thereof." Rev. Sts. *c.* 24, § 61. The location of the way in 1849 does not purport to be an alteration of the existing way, and therefore cannot operate as a discontinuance of that portion of the latter which led to the eastern and passed by the southerly side of the blacksmith's shop. The right of the public to that part of it remained, unchanged and unaffected, as before. And as to the saw-mill yard, the description of it in the deed to the defendant is unfixed and indefinite. Nothing but clear and unequivocal language would justify the conclusion that the conveyance was intended to include any part of the territory comprehended within the limits of a public highway. The occupation of any portion of it as a mill-yard and place of deposit for logs, timber and other incumbrances, accumulated in the working and operation of the mill, is entirely inconsistent with its appropriation to the public use for the common benefit of all persons having occasion to avail themselves of it. No easement of that kind in a public way will therefore pass to the grantee by implication from such an indefinite expression as " a mill and its privileges," or " a saw-mill and mill-yard," in a deed of conveyance. *Forbush* v. *Lombard*, 13 Met. 109.

The defendant upon the trial offered evidence tending to show that he and those under whom he claimed the saw-mill had, beyond the memory of man and for at least sixty years, used said triangular space and the vacant spaces by the sides of the travelled part of the Pantry road for the purpose of depositing logs to be sawed at the mill. This was offered to show, first, the subject matter of the conveyance, namely, the extent of the mill-yard described in his deed; and, secondly, that he had acquired an easement for such use in the land included within the limits of the Pantry road. This evidence was rejected, and it was clearly inadmissible for either of the proposed purposes. The right of the public in a common highway is paramount and controlling. This right extends to the entire territory within its limits; and an obstruction placed upon any part of it constitutes a public nuisance. *Commonwealth* v. *King*, 13 Met. 115. Such an obstruction, however long it may be continued, is still unlawful; and therefore no right can be acquired by persisting in the maintenance of it. It may at any time be abated by indictment. *Commonwealth* v. *Upton*, 6 Gray, 473. This right of the public confers upon every individual the privilege of travelling upon, using and enjoying a common highway for any and all lawful purposes; and consequently no one can be deprived of the enjoyment of such an easement by any adverse or unlawful use or occupation of the way by an individual for his private purposes. In addition to this general consideration, it is to be noticed also that upon the trial of this action there was no proof or offer of proof that, until the time of the grievances complained of, the plaintiff had ever been interfered with or disturbed in the personal enjoyment of his right of way or passage to or from his premises, or that he had ever suffered any special damage by the obstructions placed by the defendant within the bounds of the highway. Unless he had in some way been hindered or disturbed in the enjoyment of his right, there could of course have been no adverse use, occupation or possession as against him. It is equally apparent from these reasons, as well as from those before stated, that the alleged use of part of the highway by the defendant, in placing his logs and

lumber upon it, had, and could have had, no tendency to show that the portions so occupied or encumbered constituted any part of the mill-yard which was conveyed to him. So that there is no ground upon which the facts which he offered to prove were admissible in evidence.

It was urged at the argument that if the court was correct in determining that all the territory between the fences constituted a part of the highway, then the plaintiff's blacksmith's shop was a nuisance, and no damages could be recovered for obstructing his passage to and from it. No such exception was taken at the trial, and it cannot therefore now be insisted on. But if it had been, it would have been unavailable, for the ruling of the court was expressly qualified by the exception of the lot on which the shop stands. And besides this, the building is made by the statute before cited, equally with the fences, one of the boundaries of the road. *Exceptions overruled*

*S. T. Spaulding*, for the defendant.

*C. Delano*, for the plaintiff.